**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| U.S. Bank National Association,<br><br>　　　　　　　　Plaintiff,<br>vs.<br><br>American National Bank of Minnesota,<br><br>　　　　　　　　Defendant. | Court File No. 0:11-cv-___ (___/___) |

## COMPLAINT

For its complaint against the defendant American National Bank of Minnesota ("ANB/Minnesota"), plaintiff U.S. Bank National Association ("U.S. Bank") alleges as follows:

### INTRODUCTION

1. The financing of mortgage loans in the United States involves a system of lenders, investors, and service providers. Very often mortgage loans are originated between borrowers face-to-face with lenders or brokers and then the loans are often sold and resold "downstream" in what is called "the secondary market."

2. Often, government-sponsored entities such as the Federal National Mortgage Association (FNMA or "Fannie Mae") or the Federal Home Loan Mortgage

LEVENTHAL pllc

Corporation (FHLMC or "Freddie Mac") are involved in these transactions as downstream purchasers of mortgage loans on the secondary market.

3. Investors on the secondary market do not normally have firsthand interaction with borrowers, and certainly not at or before the time the loans are originated. These entities therefore are at the mercy of the originating lender or broker to ensure that borrowers are who they say they are, that underwriting is properly performed, that loan documents and disclosures are complete and accurate, that loan proceeds are properly distributed or paid out, that collateral (that is, the mortgaged property) is as it is described in loan documents, and that loans, in all respects, match criteria for resale on the secondary market.

4. To protect themselves from the risk of buying loans that are not what they would appear to be in all material respects, downstream loan purchasers or investors on the secondary market regularly require that upstream loan sellers adhere to guidelines, give covenants, and make warranties as to the loans' meeting the buyers' prerequisites.

5. Investors in mortgage loans on the secondary market require loan sellers to accept the obligation to buy back (or "repurchase") defective loans and to indemnify downstream loan buyers for third-party claims based on defective loans.

LEVENTHAL pllc

6. This case involves loans that Plaintiff U.S. Bank bought from Defendant ANB/Minnesota.  U.S. Bank sold the loans to Freddie Mac, which, as part of its quality control audit program, found that the loans that U.S. Bank bought from ANB/Minnesota failed to conform to agency regulations and guidelines.  Freddie Mac required U.S. Bank to buy the loans back.  U.S. Bank bought them back and, in turn, has made demands on defendant ANB/Minnesota to fulfill its obligations under the parties' agreement in regard to the loans.

7. Defendant ANB/Minnesota contractually agreed to buy back the loans at issue and agreed to indemnify U.S. Bank or compensate U.S. Bank for its losses in connection with the subject loans but ANB/Minnesota, to date, has refused to meet its contractual and common law obligations.

## PARTIES

8. U.S. Bank is a national association organized and existing under the laws of the United States whose articles of association designate Ohio as the location of its main office for purposes of its banking charter.  For purposes of diversity jurisdiction, U.S. Bank is considered a citizen of Ohio, where it has designated its main office. *See Wells Fargo Bank, N.A. v. WMR e-Pin, LLC,* Court File No. 09-3800 (8th Cir., 2011) (opinion issued on Sept. 2. 2011); *Wachovia Bank, N.A. v. Schmidt,* 546 U.S. 303 (2006) ((Case No. 04-1186)).

9. Defendant ANB/Minnesota is a Minnesota state-chartered bank with its principal place of business and office in Brainerd, Minnesota located at 1920 S 6th Street, Brainerd, Minnesota, 56401 according to records of the Minnesota Secretary of State.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this matter based on diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

11. Venue is proper in the United States District Court for the District of Minnesota pursuant to 28 U.S.C § 1391, as a substantial part of the events or omissions giving rise to this action occurred within the District of Minnesota.

## FACTUAL BACKGROUND

## PARTIES' CORRSPONDENT MORTGAGE PURCHASE AGREEMENT

12. On or about February 3, 2005, U.S. Bank and ANB/Minnesota entered into a contractual agreement entitled U.S. Bank N.A. Correspondent Mortgage Purchase Agreement ("the Mortgage Purchase Agreement").

13. Pursuant to the Mortgage Purchase Agreement, ANB/Minnesota was to sell and U.S. Bank was to buy mortgage loans on residential real estate that were eligible VA (Veterans Administration), FHA (Federal Housing

LEVENTHAL pllc

Administration), RHS (U.S. Department of Agriculture Rural Housing Service) (formerly "FmHA loans") or Conventional Mortgage Loans.

14. All loans sold by ANB/Minnesota to U.S. Bank under the Mortgage Purchase Agreement were to be originated and closed according to federal agency regulations and ANB/Minnesota expressly assumed the obligation of ensuring the compliance of all mortgage loans sold under the Mortgage Purchase Agreement with applicable agency regulations existing at the time of the purchase.

15. ANB/Minnesota expressly warranted that each mortgage loan sold under the Mortgage Purchase Agreement would be eligible for sale to the Federal Home Loan Mortgage Corporation (FHLMC or "Freddie Mac").

16. Pursuant to the Mortgage Purchase Agreement, ANB/Minnesota agreed to repurchase any mortgage loan sold by it to U.S. Bank at any time during the life of such mortgage upon the occurrence of the following events:

- a false statement or omission discovered in mortgage loan documentation resulting from ANB/Minnesota's negligence or failure to exercise due diligence;

- ANB/Minnesota's failure to obtain FHA insurance, VA or RHS guaranty, private mortgage insurance, or if such insurance or guaranty lapses or for

any reason becomes unavailable, as a result of any negligent act or omission by Seller;

- U.S. Bank was required to repurchase from GNMA, FNMA, FHLMC or any other investor by reason of a deficiency in or omission with respect to the mortgage loan documents, instruments, and agreements pertaining to the loan;

- If any representation or warranty made by ANB/Minnesota under the agreement or the Correspondent Manual with respect to a loan was, in the reasonable opinion of U.S. Bank, false at the time when made by ANB/Minnesota or became false on the occurrence of subsequent events, in whole or in part, with or without ANB/Minnesota's knowledge;

- Any material fraud, misrepresentation or act of omission with respect to the information submitted on a particular mortgage loan was determined to exist by U.S. Bank or another investor (expressly *including* third party misrepresentations); or

- ANB/Minnesota's breach of any other obligations to U.S. Bank under the Mortgage Purchase Agreement or the Correspondent Manual.

17. The Mortgage Purchase Agreement further provides for indemnification of U.S. Bank by ANB/Minnesota as follows:

> [ANB/Minnesota] shall protect, indemnify, and hold [U.S. Bank] harmless from and in respect to any and all losses,

> liabilities, reasonable costs, and expenses (including attorneys' fees) that may be incurred by [U.S. Bank] with respect to, or proximately resulting from any breach of […] any representation, warranty, or covenant of [ANB/Minnesota] hereunder. [U.S. Bank] shall be entitled to rely upon [ANB/Minnesota] as assembler and preparer for all Mortgage Loan documents, and is under no duty whatsoever to investigate or confirm any of the information set forth therein as to its honesty, accuracy or completeness. *[ANB/Minnesota] hereby agrees to indemnify and hold [U.S. Bank] harmless from any claim, loss or other damage to [U.S. Bank] including reasonable attorneys' fees resulting in whole or in part from any inaccuracy or incompleteness in the Mortgage Loan documents or any act or omission by Seller, its agents and employees, including but not limited to failure to comply with applicable state, federal and local statutes or regulations.* To the extent [ANB/Minnesota], its agents or employees, commits an actual wrong, or makes some error or omission in the preparation of any Mortgage Loan or its documents and as a result thereof, and based thereon, [U.S. Bank] commits an act or omission for which it becomes liable to the Mortgage(s) or any third party and/or a claim or cause of action is instituted against [U.S. Bank], [ANB/Minnesota] shall and hereby agrees to indemnify and hold [U.S. Bank] harmless for any such loss or damage, including reasonable attorneys' fees, resulting therefrom.

## INDIVIDUAL ANB/MINNESOTA /USB MORTGAGE LOAN PURCHASES

### (1) UNGER

18. On or about February 1, 2006, ANB/Minnesota originated a thirty-year mortgage loan to Kevra M. Unger, with a loan principal amount of $264,000.00 secured by a mortgage on the property with the street address of 9180 East River Road, Pillager, Minnesota (the "Unger Loan"). (Husband, Thomas R. Unger, also signed the related mortgage.)

LEVENTHAL pllc

19. Pursuant to the parties' Correspondent Mortgage Loan Purchase Agreement, U.S. Bank purchased the Unger Loan from ANB/Minnesota.

20. U.S. Bank, in turn, sold the loan to third-party Freddie Mac.

21. On or about January 27, 2011 Freddie Mac notified U.S. Bank that the Unger Loan had been selected for a Freddie Mac post-purchase quality-control review and Freddie Mac concluded that the loan did not qualify for Freddie Mac's program.

22. Specifically, Freddie Mac's audit determined that the borrower, Kevra Unger, had substantial debts reflected on her credit report at the time of the mortgage loan that these debts were not all reflected on her mortgage application.

23. This misrepresentation, whether intentional or inadvertent, materially changed the degree of risk in the loan.

24. In fact, the loan would not have been acceptable to U.S. Bank or Freddie Mac had the borrower's credit circumstances been accurately portrayed in her mortgage application.

25. Freddie Mac required U.S. Bank to repurchase the loan from Freddie Mac.

26. U.S. Bank did repurchase the loan from Freddie Mac.

27. On or about April 1, 2011, U.S. Bank sent a letter to ANB/Minnesota with a demand that ANB/Minnesota repurchase the Unger loan from U.S. Bank and

LEVENTHAL pllc

make U.S. Bank whole for U.S. Bank's losses on the Unger Loan due to Freddie Mac's triggering of its right to require repurchase, which triggered ANB/Minnesota's obligation to repurchase and/or make whole U.S. Bank pursuant to the Correspondent Mortgage Purchase Agreement.

28. As of July 13, 2011, U.S. Bank renewed its demand on ANB/Minnesota and the full repurchase amount on the Unger loan at that time was $ 245,702.88.

29. Prior to July 25, 2011, ANB/Minnesota, through its President, Mr. Terry Kurowski, agreed to repurchase the Unger loan from U.S. Bank.

30. On information and belief, having learned that the borrower, Kevra Unger was divorcing from her husband, Thomas R. Unger on or before July 25, 2011, ANB/Minnesota went back on its promise to repurchase the loan.

31. ANB/Minnesota has, to date, refused to make U.S. Bank whole for the losses that U.S. Bank has incurred in connection with the Unger Loan for which ANB/Minnesota is responsible pursuant to the Mortgage Purchase Agreement and documents incorporated therein by express reference.

### (2) COUTURE

32. On or about September 14, 2007, ANB/Minnesota originated a thirty-year mortgage loan to David Scott Couture and Lisa M. Powers, with a loan principal amount of $245,100.00 secured by a mortgage on the property with

LEVENTHAL pllc

the street address of 9287 Rolling Oaks Trail, Pequot Lakes, Minnesota (the "Couture Loan").

33. Pursuant to the parties' Correspondent Mortgage Loan Purchase Agreement, U.S. Bank purchased the Couture Loan from ANB/Minnesota.

34. U.S. Bank, in turn, sold the loan to third-party Freddie Mac.

35. On or about August 12, 2011, Freddie Mac notified U.S. Bank that the Couture Loan had been selected for a Freddie Mac post-purchase quality-control review and Freddie Mac concluded that the loan did not qualify for Freddie Mac's program.

36. Specifically, Freddie Mac's audit determined the primary mortgage insurance had been rescinded, making the loan ineligible for sale to Freddie Mac.

37. Consequently, Freddie Mac required U.S. Bank to repurchase the loan from Freddie Mac.

38. U.S. Bank did repurchase the loan from Freddie Mac.

39. On or about August 31, 2011, U.S. Bank sent a letter to ANB/Minnesota with a demand that ANB/Minnesota repurchase the Couture loan from U.S. Bank and make U.S. Bank whole for U.S. Bank's losses on the Couture Loan due to Freddie Mac's triggering of its right to require repurchase, which triggered ANB/Minnesota's obligation to repurchase and/or make whole U.S. Bank pursuant to the Correspondent Mortgage Purchase Agreement.

LEVENTHAL pllc

40. ANB/Minnesota has, to date, refused to make U.S. Bank whole for the losses that U.S. Bank has incurred in connection with the Couture Loan for which ANB/Minnesota is responsible pursuant to the Mortgage Purchase Agreement and documents incorporated therein by express reference.

## COUNT I: BREACH OF CONTRACT

41. All of the foregoing paragraphs of this Complaint are incorporated herein by reference.

42. Plaintiff U.S. Bank and Defendant ANB/Minnesota at all relevant times were parties to the above-referenced Mortgage Purchase Agreement, a legally enforceable contract, the principal terms being that U.S. Bank agreed to buy and ANB/Minnesota agreed to sell mortgage loans subject to certain terms and conditions (hereinafter "the contract").

43. Plaintiff U.S. Bank complied in all respects to its obligations under the contract.

44. ANB/Minnesota, by selling U.S. Bank loans that did not meet the specifications and requirements of the contract, breached the contract.

45. ANB/Minnesota's breaches of the contract resulted in U.S. Bank incurring damages exceeding $75,000.

LEVENTHAL pllc

## COUNT II: BREACH OF CONTRACT

46. All of the foregoing paragraphs of this Complaint are incorporated herein by reference.

47. Plaintiff U.S. Bank and Defendant ANB/Minnesota at all relevant times were parties to the above-referenced Mortgage Purchase Agreement, a legally enforceable contract, the principal terms being that U.S. Bank agreed to buy and ANB/Minnesota agreed to sell mortgage loans subject to certain terms and conditions (hereinafter "the contract").

48. Plaintiff U.S. Bank complied in all respects to its obligations under the contract.

49. ANB/Minnesota, by refusing to repurchase the above-referenced loans, an obligation for which ANB/Minnesota, by contract, assumed responsibility, breached the contract.

50. ANB/Minnesota's breaches of the contract resulted in U.S. Bank incurring damages exceeding $75,000.

## COUNT III: BREACH OF CONTRACT

51. All of the foregoing paragraphs of this Complaint are incorporated herein by reference.

52. Plaintiff U.S. Bank and Defendant ANB/Minnesota at all relevant times were parties to the above-referenced Mortgage Purchase Agreement, a legally

enforceable contract, the principal terms being that U.S. Bank agreed to buy and ANB/Minnesota agreed to sell mortgage loans subject to certain terms and conditions (hereinafter "the contract").

53. Plaintiff U.S. Bank complied in all respects to its obligations under the contract.

54. ANB/Minnesota, by refusing to indemnify U.S. Bank for its losses from the repurchase demands by Freddie Mac for which ANB/Minnesota, by contract, assumed responsibility, breached the contract.

55. ANB/Minnesota's breaches of the contract resulted in U.S. Bank incurring damages exceeding $75,000.

**COUNT IV: CONTRACTUAL & COMMON LAW INDEMNIFICATION**

56. All of the foregoing paragraphs of this Complaint are incorporated herein by reference.

57. ANB/Minnesota agreed to indemnify and hold U.S. Bank harmless from any claim, loss or other damage to U.S. Bank including reasonable attorneys' fees resulting in whole or in part from any inaccuracy or incompleteness in mortgage loan documents relevant to mortgage loans sold by ANB/Minnesota to U.S. Bank.

58. Mortgage loan documents in the above-referenced loans were inaccurate or incomplete as described above at length in preceding paragraphs.

LEVENTHAL pllc

59. Freddie Mac forced U.S. Bank to repurchase the above-referenced loans because of wrongful acts or omissions and defects in the loans for which ANB/Minnesota, and not U.S. Bank, bore responsibility.

60. The right of indemnity exists whenever the relation between the parties is such that either in law or in equity there is an obligation on one party to indemnify the other, as where one person is exposed to liability by the wrongful act of another in which he did not join.

61. U.S. Bank is entitled to indemnification in this case from ANB/Minnesota contractually and under the common law.

62. U.S. Bank has made demand for indemnification in regard to losses it has incurred and continues to incur, and ANB/Minnesota has refused to indemnify U.S. Bank or make U.S. Bank whole for losses U.S. Bank suffered due to the wrongful acts and omissions by ANB/Minnesota or its authorized agents.

63. U.S. Bank has damages exceeding $75,000 for which it is entitled to indemnification by ANB/Minnesota by contract and under rights of common law indemnification.

## COUNT V: ESTOPPEL

64. All of the foregoing paragraphs of this Complaint are incorporated herein by reference.

LEVENTHAL pllc

65. ANB/Minnesota agreed and promised to repurchase the Unger loan.

66. U.S. Bank relied to its detriment on ANB/Minnesota's agreement and promise to repurchase the Unger loan by, among other things, forestalling legal action to enforce the Mortgage Purchase Agreement.

67. As a result, U.S. Bank will be harmed if estoppel in its favor and against ANB/Minnesota is not applied in this case.

WHEREFORE, based on the foregoing, Plaintiff prays for judgment as follows:

i. For damages in an amount greater than $75,000, with an exact amount to be proven at trial;

ii. For an award of costs, disbursements, interest, and attorneys' fees as allowed by law; and

iii. For such other and further relief as the Court deems just and equitable.

Dated: September 22, 2011

LEVENTHAL pllc

By:   s/ Seth Leventhal

Seth Leventhal, #0263357
2100 Rand Tower
527 Marquette Ave. South
Minneapolis, Minnesota 55402
email: seth@leventhalpllc.com

*Attorneys for U.S. Bank National Association*